## CHAUNCEY v. ARNOLD and WIFE.

An instrument, in the form of a mortgage, but containing the name of no mortgagee, does not become effectual by its delivery to one who advances money upon the agreement that he shall hold the paper as security for his loan.

Whether it could be made effectual by parol authority from the mortgagor to insert the lender's name as mortgagee: *Quære.*

APPEAL from the Superior Court of the city of New York. Action to enforce a bond executed by the defendant, Lemuel Arnold, and a mortgage upon her separate property executed by Caroline Arnold, his wife, as collateral to such bond. The complaint stated that both the bond and mortgage were executed in blank as to the name of the obligee, in the penal sum of ten thousand dollars, conditioned to pay five thousand dollars to an obligee not named, and were delivered, with the blanks not filled up, to the plaintiff, as security for moneys advanced and liabilities incurred. The material allegations of the complaint were all denied in the answer. The cause was tried before one of the justices of the court, without a jury.

On the trial the plaintiff introduced in evidence an antenuptial agreement between Arnold and his wife, showing the conveyance to trustees of her separate property for her use, and a power of attorney, signed by the trustees, authorizing an attorney to mortgage such estate for his benefit, and also

introduced the bond of Arnold, the same being in blank, with the name of no obligee inserted therein; and then offered in evidence the mortgage, in like manner executed and remaining in blank. The defendants' counsel objected to the admission of said mortgage in evidence, upon various grounds then specified, among which was the objection that the same was "in all respects informal, illegal and incomplete." The objection was sustained, and the evidence excluded; to which decision the plaintiff duly excepted. The plaintiff thereupon rested his cause; and the court ordered that the complaint be dismissed.

On appeal, the court, at general term, sustained the decision that the mortgage was not a complete instrument, and that the plaintiff was not entitled to fill up the blank by inserting his own name therein, and could not maintain any action thereon, and affirmed the judgment. From this judgment, an appeal was brought to this court.

*J. W. Ashmead* and *Grosvenor P. Lowrey*, for the appellant.

*Wm. Curtis Noyes* and *Elbridge T. Gerry*, for the respondents.

DENIO, J. The marriage articles prescribed the manner in which Mrs. Arnold was to exercise her power over the property settled upon her. The trustees were authorized to dispose of it to such person or persons, and in such manner and form, as she, notwithstanding her coverture, by any deed or writing, under her hand and seal, or by her last will and testament, or writing in the nature of a last will and testament, should direct, limit or appoint. Conceding that the actual participation of the trustees in the act would not be essential to effect a disposition of the property, yet the form of the disposition by Mrs. Arnold must conform to the direction of the articles. As the disposition under which the plaintiff claims was designed to operate in the lifetime of Mrs. Arnold, it must, to be valid, be by an instrument under seal. The question, therefore, is, whether the paper in ques-

tion, defective as it is by the omission of the name of the plaintiff as the party in whose favor it is alleged to have been executed, can nevertheless be sustained as a deed, mortgaging the property to him. If we take into consideration only what is written, the paper is wholly without meaning. A transfer to a person not named, or in any way described or designated, is, unconnected with anything else, a mere nullity. Upon principle it would seem that, as the paper was in such a condition when issued and delivered by her, a subsequent change in its words, which, by filling up the blank with the plaintiff's name, would make it significant of its office and intention, could not be considered in law her written act, though done pursuant to her direction, as proved by parol evidence. To hold thus would let in some of the mischiefs which the authors of the marriage settlement may be supposed to have intended to guard against, in requiring a writing under seal to effect a disposition of the property. Still, if there is a satisfactory course of adjudication to that effect, a rule of property has been established which we are bound to follow. But, although there is some diversity in the cases, I am of the opinion that none of those of modern date countenance the method of creating a title to, or a lien upon, land which it is sought to uphold in the present case. In the first place, the cases arising upon bills and notes are plainly distinguishable. Commercial paper, under the custom of merchants and the statute of Queen Anne, has always been considered as forming an exception to many of the rules of the common law; and there is no feature in which there is a wider departure than the one relating to the issuing of paper in blank. We have lately decided, in conformity with a steady course of modern decisions, that, if a man issue a bill or acceptance in blank as to date, amount or time of credit, and it be filled up so as to create obligatory paper for any amount, and be passed into the hands of a *bona fide* holder, it becomes valid as against the party issuing it. (*Van Duzer* v. *Howe*, 21 N. Y., 531.) But no one would be bold enough to contend that a paper intended to operate as a mortgage could be put in circulation in such a shape, and by

filling up could be made obligatory on any one. This doctrine is limited strictly to mercantile paper, and is based solely upon its negotiable quality, which gives a *bona fide* holder, in many instances, a better title than the original party had.

There is another set of cases having a closer connection to the one under consideration, but which, I think, are plainly distinguishable from it. It should be remembered that, in the bond and collateral instrument before us, the blank for the name of the creditor has not to this day been filled up by any one. The papers were produced to the Superior Court at the trial in the same imperfect shape as when Mrs. Arnold parted with them. There is no allegation in the complaint, and there‑ was no offer to prove, that she ever directed or authorized any one to fill up the blank with the name of the plaintiff, either absolutely or conditionally. The plaintiff's claim, in substance, is, that the papers, in their present imperfect condition, could, by the fact of a delivery for a valuable consideration to an innocent party, be made valid assurances against Mrs. Arnold in the same manner as a note or bill made indorsed or accepted in blank could be negotiated to a *bona fide* holder for value. None of the cases relied on sustain such a position. In *Knapp* v. *Maltby* (13 Wend., 587), certain papers essential to enable the plaintiff to maintain the action, and which had been signed and sealed by the parties to be bound by them, were placed in the hands of an agent, with authority by parol to make any change in them, before delivery, which a person named might suggest in order to make them acceptable to the party to whom they were to be delivered. An alteration, not at all material to their sense, was made pursuant to this authority, and the instruments were then delivered to the defendant, for whom they were intended, in order to fulfill a condition precedent upon which his liability attached; and it was held that they were valid and sufficient. In *Woolley* v. *Constant* (4 John., 54), an alteration was made in the bill of sale of a vessel, by the assent of the parties, after it had been delivered, by filling up certain blanks for the recital of the register. In trover for the vessel, it was contended that these alterations ren‑

dered the conveyance void; but it was held otherwise. The court considered that the bill of sale was sufficient to have passed the title to the vessel if the blanks had remained unfilled. The point in *Penny* v. *Corwithe* (18 John., 499), was, whether the parties to a sealed submission to arbitrators could by con sent make an alteration in it after delivery; and it was held they could, and that the instrument then took effect as a new execution of it. *Ex parte Kerwin* (8 Cow., 118) was like *Knapp* v. *Maltby*. An alteration was made in an appeal bond by one of the obligors, by the direction of the other, after it was subscribed and before the delivery; and the bond was held effectual. None of these cases, I think, have any material bearing upon the one under review.

A looser doctrine than the one which now prevails once received some countenance in the English courts; but the subject has been reconsidered, and the principle for which the plaintiff contends has been overruled by a well-considered judgment of the Court of Exchequer. (*Hibblewhite* v. *McMorine*, 6 Mees. & Welsb., 200.) The instrument there was the transfer of shares in a corporation, which was required to be by deed; and it was held that a transfer delivered in blank as to the purchaser's name did not pass any title. This case is supposed by the counsel for the plaintiff to be hostile to that of *Kortright* v. *The Commercial Bank of Buffalo* (22 Wend., 348). The difference is that, in the latter case, the transfer was not required to be by deed. The instrument which it was held might be delivered in blank was a power of attorney to make the transfer on the books. Neither the power nor the transfer was required to be under seal. The case was, therefore, one which might be, and in fact was, brought within the theory of mercantile paper; whereas, if the transfer had required a specialty, the instrument must have been sufficient in form when it took effect by delivery, or it would not have conveyed a title.

I am for affirming the judgment of the Supreme Court.

SMITH, J. The single question presented upon this appeal is, whether the judge at the circuit erred in excluding the

mortgage purporting to be executed by Mrs. Arnold, when the same was offered in evidence. I think there can scarcely be any doubt that the decision was entirely correct. The paper called a mortgage was not, in fact, in any sense, a deed. It was entirely incomplete. Upon its face it was an imperfect instrument. No mortgagee or obligee was named in it, and no right to maintain an action thereon, or to enforce the same, was given therein to the plaintiff or any other person. It was, *per se*, of no more legal force than a simple piece of blank paper. If the plaintiff had proved, or offered to prove, the allegations of his complaint, that this mortgage was delivered to him by the defendants under an agreement that he should make advances to Arnold, and that he should hold this mortgage as security for such advances, and that such advances were actually made on the security of such conveyance, a very different question would have been presented for our consideration.

Delivery is essential to the validity of a deed. When the deed is perfect upon its face, possession by the grantee named therein is presumptive evidence of a proper delivery. But in this case, no grantee being named in the body of the instrument— assuming that the blank might be filled after the execution of the instrument by the authority of the parties executing the same— it was indispensable to prove a delivery in fact, with the parol authority to fill the blanks with the plaintiff's name as mortgagee. The claim of the plaintiff and the argument of his counsel is, that possession of this paper, called a mortgage, implies a delivery to the plaintiff with authority to him to fill up the blank with his own name. This would be so with negotiable paper. This court recently so held in *Van Duzer* v. *Howe* (21 N. Y., 534), following the case of *Russel* v. *Langstaffe* (Doug., 516), in which Lord MANSFIELD said: "The indorsement of a blank note is a letter of credit for an indefinite sum." The same point has been so held in many other cases.

But this rule has never been applied to deeds or instruments under seal. The case of *Kortright* v. *The Commercial Bank of*

*Buffalo* (22 Wend., 348), in which it was held that stock might be transferred by the holder writing his name in blank and putting his seal on the certificate, is scarcely an exception to this rule. That case was put upon its particular facts relating to the transfer of such securities, and evidence was given showing that such was the customary mode of transferring stock in the market of New York and elsewhere; and parol proof was given of delivery of the stock scrip in fact, as collateral to a loan of money, and of the particular facts showing that the holder received it in good faith as security for such loan. But in respect to instruments under seal, parol proof of an authority to fill the blank and deliver the deed has been generally required and given.

The earliest or leading case is that of *Texira* v. *Evans*, not reported but referred to in *Master* v. *Miller* (Anst., 228; *S. C.*, 4 T. R., 320), by Justice WILSON. In that case, as there stated, Evans wanted to borrow £400, or so much of it as his credit should enable him to raise, and for this purpose he executed a bond with blanks for the name and sum, and sent an agent to raise money on the bond. Texira lent £200 on it, and the agent accordingly filled up the blanks with that sum and Texira's name, and delivered the bond to him. On *non est factum* pleaded, Lord MANSFIELD held it a good deed. Here it will be seen that the bond was executed by Evans and delivered to an agent with authority to fill the blanks, negotiate and deliver the bond; and it was done accordingly. All these facts were extrinsic to the bond, and were necessarily proven by parol, and this notwithstanding the blanks in the bond had been filled up; and the bond produced at the trial was upon its face a complete and perfect instrument. This case establishes the rule that an authority to an agent to fill up and complete a deed and deliver the same, may be shown by parol, and, if duly proved, is sufficient to give force and validity to the deed in the hands of a party who has received the same for value and without fraud.

This case, it is true, has been overruled in England in the case of *Hibblewhite* v. *McMorine* (6 Mees. & Welsb., 214), where

it was held that an authority to execute a sealed instrument could not be given by parol, but must be by deed. But this case makes a mistake, I think, in considering that there is no distinction between the original execution of a deed and the filling up of some blanks in the same, not essential to its chief object and intent, but merely to its completeness. An authority to fill up a blank in a deed cannot properly be regarded as an authority to execute a deed. The deed in *Texira* v. *Evans* was, in fact, executed by Evans with his own hand and seal. He made it for a bond, to any one who would take it and advance him the money he wished to loan. It was to him entirely immaterial whose name was put into the body of the bond as obligee, and the amount inserted must necessarily be the sum borrowed.

This case of *Texira* v. *Evans* has been followed in this State in a number of cases. Besides the case of the *Commercial Bank of ·Buffalo* v. *Kortright* (*supra*), which was decided on the authority of that case, the case of *Knapp* v. *Maltby* (13 Wend.) is another authority in support and approval of the rule of *Texira* v. *Evans*. In this case an alteration was made in a sealed instrument after its execution, under a parol authority. The court held that this did not avoid the instrument; that the case, in principle, was within that of *Texira* v. *Evans;* and Judge SUTHERLAND says: "The instrument was signed and sealed by the *party*, and not by the *agent;* the authority was, not to *execute* the instrument, but to make certain alterations or additions to it."

In *ex parte Decker* (6 Cow., 60), appeal bonds were executed in blank, with a parol authority to fill them up and deliver the bonds; the court held them valid, on the authority of *Texira* v. *Evans*. In 8 Cow., 118, a like bond was executed in blank, with like parol authority to fill the blank and deliver it, which was done, and held valid. And in *Woolley* v. *Constant* (4 John., 60), the case is likewise approved.

In other States a great variety of cases might be cited to the same effect, holding that a parol authority to fill up blanks in an executed deed, or make verbal alterations in it, might be

proved to give validity to or sustain the instrument. But, in none of the cases that I have seen, has the deed been held valid without the parol proof of the extrinsic facts, showing the due filling up of the blanks of the deed before its delivery, and its delivery for value by the agent, upon the clear authority, direction or consent of the grantor or obligor.

While, therefore, the rule of *Texira* v. *Evans*, which the plaintiff's counsel invokes, should doubtless be regarded as settled law in this State, it does not help him in this case. He did not bring himself within that case. He did not give, or offer to give, proof of a parol authority to Arnold to fill the blanks in the mortgage and negotiate and deliver it; and the said blanks never were, in fact, filled by him, and the plaintiff clearly could not fill them at the trial without some proof of an authority to do so, extrinsic to the instrument itself.

The judgment should be affirmed.

SUTHERLAND, ALLEN and WRIGHT, Js., concurred.

DAVIES and GOULD, Js., thought that the paper might have been made effectual by proof of parol authority to fill the blank; and they were for reversal because the plaintiff was not allowed the opportunity to give such evidence, to which they thought the proof of the paper itself was preliminary.

Judgment affirmed.