STATE TO USE OF WM. A. McMURRAY, Respondent, *v.* GEORGE P. DOAN *et als.*, Appellants.

*Execution — Levy — Claim — Bond.*—An execution issued upon a judgment in favor of A. against B. The sheriff levied the execution, and M. filed with the sheriff a claim to the property seized, and the sheriff demanded and received from A. a bond of indemnity. A subsequent execution issued in favor of D., upon which the sheriff endorsed a levy, and required of D. a bond of indemnity before paying to D. the surplus realized upon the sale by virtue of the execution in favor of A., which was given. In a suit upon the bond given by A., D. recovered the value of the goods seized to satisfy the execution of A. In a suit upon the bond given by D., *Held*, 1. That, the sheriff having in his possession the goods levied upon under A.'s execution, no further levy was required upon the execution of D. 2. That the claim filed by M. under the levy upon the execution of A., authorized the sheriff to demand a bond of indemnity from D. 3. That M. was entitled to receive satisfaction for the value of the goods sold which were applied upon D.'s execution. 4. That the taking of the bond from D. discharged the sheriff from his liability for his levy. 5. That M. was entitled to full satisfaction for the goods sold to satisfy the executions.

*Appeal from St. Louis Circuit Court.*

This case was tried by the court. The defendant asked certain declarations of law, as follows:

1. Every conveyance, by mortgage or otherwise, of goods and chattels, made with the intent to hinder and delay creditors in the collection and enforcement of their debts by process of law, is fraudulent and void; and any person accepting such conveyance with a knowledge of such intent on the part of the vendors, obtains no valid title, although he may have paid a valuable consideration. for such goods. If the court finds from the evidence that Forrester & Bros. were in insolvent circumstances and unable to meet their debts as they matured, and that they applied to. Dr. McMurray to obtain assistance from him, and that Dr. McMurray, being aware of their circumstances, purchased the notes read in evidence and took a mortgage on their stock of goods, agreeing to give them as much time as they needed to repay him, and that the object of Forrester & Bros. in making the arrangement was to delay their other creditors for the time being until they could make acceptable terms with them. And if the court also find that Dr. McMurray was aware of their intentions at the time he took the mortgage read in evidence, then the mortgage gave him no title to the goods as against Jeffry & Son, creditors of Forresters, although he may have paid a valuable consideration for the notes and mortgage.

2. The bond signed by the defendant, and read in evidence by the plaintiff, does not estop the defendant from showing that there was in fact no levy made upon the goods under the execution of Jeffry & Son against Forrester & Bros; nor that the plaintiff McMurray in fact made no claim to the surplus money in the hands of the sheriff after satisfying the Mack execution read in evidence.

3. If the court find from the evidence that there was in fact no levy made by the sheriff upon the goods under the Jeffry execution, and that said goods were seized under execution in favor of Mack against Forrester before the Jeffry execution came to the sheriff's hands, and that plaintiff made no other or further claim than the above read in evidence by the plaintiff; and that McMurray, the plaintiff, made no

claim or demand for the surplus in the hands of the sheriff, then the bond executed by the defendants was unauthorized by any statute, and gives the plaintiff no right of action to the use of William A. McMurray against the defendants in this suit.

The court gave the 1st and 2d instructions, and refused the 3d.

*Krum, Decker & Krum,* for appellants.

When McMurray filed his claim under the Mack execution and levy (which was on the whole stock), and brought his suit (in the nature of an action of trover or trespass de *bonis asportatis*) to recover the value of all the goods, and recovered judgment in said suit, he gave up his right of property in the goods levied on, and cannot sue any other subsequent trespasser.

At common law, the owner may pursue his goods, or the proceeds thereof, into whatever hands they may come; the special statute of 1855 does not deprive him of this right. The object of that statute is simply to protect the sheriff where a claim is made, and the statute puts the owner upon an election of remedies, either to sue upon his common law right the taker, or to make claim, and then the statute confines him to an action on the bond—Bradley v. Holloway, 28 Mo. 150. The statute, however, does not change the principles of common law on the subject; the remedies in the statute are cumulative.

It is stated in a work of authority, that, when separate actions have been brought against several defendants for the same single act of trespass, the party last sued may plead the pendency of the first in abatement; and a recovery against one one of several parties to a joint tort frequently precludes the plaintiff from proceeding against any other party not included in such action—1 Chit. Pl. 79.

In an action for assault and battery committed by several, a recovery against one may be pleaded in bar to an action for the same battery against another—Smith v. Laughton, 2 McMul. 184.

State to use, &c., v. Doan et als.

A judgment in trespass *de bonis asportatis*, "not satisfied" is a bar to an action against a co-trespasser—Campbell v. Phelps, 1 Pick. 62; White v. Bullock, 5 Greenl. 147.

By a lawful seizure, a debtor loses his property in the goods —4 Mass. 402.

A judgment in trover or trespass *de bonis asportatis* for a permanent conversion changes the property—Brown v. Norton, 2 Cro. Jac. 73; Adams v. Broughton, 2 Str. 1078; Bull. N. P. 49; Hoyt v. Brown, 1 Rawle, 121, re-affirmed; Marsh v. Pier, 4 Rawle, 277; Morrell v. Johnson, 1 Hen. & M. 449; Fox v. Northern Liberties, 3 Watts & S. 107; 5 id. 17; Rogers v. Moore, 1 Rice, (S. C.) 60; Carlisle v. Burley, 3 Greenl. 250—and bars plaintiff from asserting his title in any other action.

Execution creditors levying their executions at different times cannot be held as joint trespassers—Brewster v. Gauss, 37 Mo. 518.

In Missouri the exact point appears not to have been directly decided, although it is recognized in Polk's Adm'r v. Allen, 19 Mo. 467.

When a judgment creditor levies his execution upon the money of a debtor in the sheriff's hands, there is no authority for the owner of the money to sue the creditor so levying; and hence there was no warrant for the bond upon which defendants are sued. It may amount to an indemnity to the sheriff upon common law principles; but the plaintiff to whom the bond is not made is not in privity of contract, and cannot sue upon the bond.

The statute of 1855 is special. 1. It relates to execution on personal property only; it does not apply to lands; it does not apply to money seized. 2. It provides that the owner must make a claim when the sheriff levies on property.

*Hill & Jewett*, for respondent.

Under the 2d instruction asked, the defendants ask the court to assume that the sheriff made no levy under the Doan execution, when the officer testifies distinctly that he

did levy the execution in favor of Doan upon the goods, while in his hands, under the Mack levy, and proves his own memorandum made on the execution, the day of the levy, to that effect; that further, an officer who has goods in his hands under an execution cannot levy another upon them.

That a levy was made is clearly proved by the officer, and that the officer who has property in his hands under one execution can levy another execution upon the same property is too simple and every day law and practice to require argument to sustain. State to use of Goldsall v. Watson, 30 Mo. 122, has settled that point.

HOLMES, Judge, delivered the opinion of the court.

An execution was levied upon a stock of goods in a store. The plaintiff claimed to be the owner of them. The goods were seized and removed to the sheriff's warehouse, and the return on the execution shows a levy made on the whole property. At a subsequent day another execution came into the hands of the sheriff against the same defendants, upon which the deputy (as he testifies) made a memorandum in pencil in these words: " Levied this execution July 16th, 1861." The goods were sold under the levy of the first execution, and, producing more than enough to satisfy that execution, the surplus money was applied in satisfaction of the other, and then the following return was made thereon:— " Amount applied on this writ after paying costs of sale from proceeds of sale, made under execution No. 71, to September term, 1861, $500.88. No other goods, chattels or real estate belonging to the within named defendants found in my county whereon to levy and make the balance of the debt or any part thereof."

The plaintiff made his claim in writing before the sheriff under the first execution according to the statute, and an indemnifying bond was duly executed and delivered to the sheriff by the execution plaintiff. No separate claim was made under the second execution; but the sheriff, before paying over the surplus to the plaintiff in that execution,

required them to give another bond in conformity with the statute, as in case of a levy and claim made. This suit is brought upon the bond so given. It appears, also, that a suit had been previously brought to the plaintiff's use upon the bond given under the levy of the first execution, and that he had recovered judgment only for that portion of the proceeds of the sale which had been applied to the satisfaction of the first execution, and he now seeks to recover in this suit for the remainder. The plaintiff had judgment. The defendants appeal, and assign for error the refusal of their instructions.

It is contended for the defendants that there was no levy. A levy of an execution means the actual seizure of the property by the officer—R. C. 1855, p. 753, § 74. But here the goods were already in the possession and custody of the officer under the prior levy. In such case, no further actual seizure need or can be made. The lien of the second execution bound the goods. When a seizure is made, the officer should properly make an inventory for the purpose of identifying the goods levied upon; but this is not necessary in all cases—Haggerty v. Wilbur, 16 Johns. 287; 2 Paine & D. Prac. 334. It was done here when the first levy was made. The sheriff having the goods of the defendant in his possession under the prior writ, the goods were bound by the second execution, subject to the first, from the time of its delivery to the officer; and the final levy, when the second execution was received, was sufficient for both executions—Cresson v. Stout, 17 Johns. 116; Russell v. Gibbs, 5 Cow. 390; 2 Paine & D. Pr. 306, 335. No further overt act was necessary to constitute a second levy—Turner v. Austin, 16 Mass. 181. The surplus arising from the sale under the first execution in such case is bound by the second execution, and is applicable for its satisfaction—Jones v. Albertson, 7 Taun. 56. The testimony of the deputy shows that a levy upon this property was intended. An effectual levy is shown without the aid of his testimony. But one return upon the execution was required, and the return made

shows that the surplus was applied to this execution. This was levy enough. By the statute, the bond is to be conditioned for the payment of all damages that may be sustained in consequence of any *levy* or *sale*. This was a levy within the meaning of the statute.

It is said further, that no claim was made under this execution. The claim was made under the first levy, when the actual seizure took place. If this was a sufficient seizure to answer the purpose of a levy of the second execution, it was in like manner a sufficient claim made. The claim is made for the purpose of notifying the sheriff, so that he may protect himself by requiring a bond, or by releasing the goods. If the goods had been released under the first writ, they would have been held by the second.

In State to use, &c., v. Watson, 30 Mo. 122, a bond was taken by the officer on a verbal claim merely, and it was held that the bond taken was valid, and protected the officer. Here an additional levy is made upon the same goods which had been already claimed in due form. This was claim enough to notify the sheriff, and the bond given must be considered as authorized by the statute. The owner and claimant had already elected to give up his action against the sheriff, and resort to his bonds or to his action against the execution plaintiffs for indemnity. The bond that was first given in this claim may have covered the whole trespass and injury; but the second bond, like the second levy, was cumulative upon the other.

It is urged further, that the former recovery on the first bond was a bar to another action. The seizure and sale of the goods of another as the property of the defendants in the executions was a trespass against the true owner, a tortious act, and a conversion of the goods—Meade v. Smith, 16 Conn. 346 ; Woodbury v. Long, 8 Pick. 543 ; Drake on Attach. (3d ed.) § 196. The actual sale of the goods taken as the property of the defendant bound the property, and gave a title to the purchaser at the sale ; for sales made by a sheriff are not to be defeated. No man would buy goods levied upon and

sold under an execution if his title could be avoided—Small-comb v. Cross, 1 Ld. Raym. 251; Blake v. Shaw, 7 Mass. 505. The proceeds of the goods sold are supposed to be the property of the defendant; but if the goods really belonged to another, the owner has his action against the sheriff for the trespass and conversion, and may recover the value in damages. If such damages were recovered from the sheriff, the result would be that the money arising from the sale of the goods would belong to him. But under the statute the bonds taken are interposed for the protection of the officer against an action, and for the indemnification of the claimant against loss by the conversion of his goods; and then it may very well be that the proceeds of the sale must belong to the plaintiffs in the executions. The owner is not compelled to prefer his claim under the statute; but if he does so, and a bond be taken as required, by that act alone he elects to give up his right of action against the sheriff, and to seek his remedy on the bond. And if a sufficient bond be taken, the officer ceases to be liable, and the bond is interposed between him and the claimant—Bradley v. Holloway, 28 Mo. 150. The claimant must resort to his bond or to his action against the execution plaintiff.

Aside from the statute, it might be true that if the plaintiff recover once in an action of trespass, he cannot again recover in an action which is not a concurrent remedy, and that a recovery in trespass would produce the same bar that is produced by a recovery in trover against another recovery in assumpsit for the price of the same goods (Floyd v. Browne, 1 Rawle, 121); and a judgment for the damages would vest the property in the goods in the defendant—March v. Pier, 4 Rawle, 286; Brown v. Wooton, 2 Cro. Jac. 73; Adam v. Broughton, 2 Str. 1078. But (as it was said in Floyd v. Browne) a plaintiff in such case is not compelled to elect between actions that are consistent with each other and separate actions against a number of persons who are severally liable for the same thing, or against the same defendant on distinct securities for the same debt or duty, are consist-

ent and concurrent remedies. The plaintiff here has received two distinct bonds for his indemnification against loss, not exactly by one and the same trespass and conversion (though it would be all the same if it were), but rather in strictness of two distinct acts of trespass; for the second levy was an additional trespass and injury, inasmuch as if the first levy had been for any cause released, the second levy would still have held the goods or the proceeds thereof, though the whole actual damages may have been done by the first levy and sale, so far as the trespass and conversion and the rights of the owner were concerned. No action of trespass has been brought; but the plaintiff has recovered on the first bond, not for the whole value of the goods that were seized and converted (as doubtless he might have done), but only for that portion of the proceeds and that part of the value which was in fact applied to his execution.

The sheriff is not bound to levy on more goods than may be amply sufficient to satisfy the debt, nor the plaintiff to sanction an excessive levy; but if they venture to do so, the trespass and injury will extend to the whole actual seizure, and the bond given for the protection of the officer will cover the whole trespass, and there can be little doubt that the plaintiff might have recovered this whole amount of his damages on the first bond. But it is clear also that these bonds were cumulative remedies, and in such case the party has a right to pursue each and all until he has obtained full satisfaction; nor could a judgment unpaid in one suit be any bar to an action on another bond against other persons—Drury v. Drury, 36 Mo. 281; Burge on Sur. 178; Drake v. Mitchell, 3 East, 258.

We conclude, therefore, that there was no error in refusing the defendants' instructions.

Judgment affirmed. The other judges concur.