CELIA M. FRANKLIN, Respondent, *v.* WILLIAM H. GUM-ERSELL ET AL., Appellants.

### May 18, 1881.

1. The owner of property wrongfully taken under an execution against another is not restricted to his claim under the statute, but may resort to the indemnity-bond, or to his action against the execution plaintiff.

2. A sale of personal property unaccompanied by delivery within a reasonable time is void, as to creditors, though delivery be made before a levy by the creditors.

3. When, by the levy, a creditor has gained a right to question the sale, every element of its validity as a statutory sale is open to investigation.

4. Where one whose goods are by his fault intermixed with those of an execution debtor has notice of a levy, the burden is on him to make the separation.

5. Where one innocently mingles his own with goods of an execution debtor, believing all to be his own, he is entitled to recover the value of his goods, if taken under execution against the debtor.

APPEAL from the St. Louis Circuit Court, BOYLE, J. *Reversed and remanded.*

G. M. STEWART, for the appellant: A sale of personalty, unaccompanied by a visible and notorious change of possession, is void as to creditors of the vendor. — *Claflin* v. *Rosenberg*, 42 Mo. 439; *Allen* v. *Massey*, 17 Wall. 351; *Bosse* v. *Thomas*, 3 Mo. App. 472; *Bishop* v. *O'Connell*, 4 Mo. App. 578; *Lesem* v. *Herriford*, 44 Mo. 323; *Wright* v. *McCormick*, 67 Mo. 426. A subsequent change of possession will not validate the sale. — *Chenery* v. *Palmer*, 6 Cal. 119. It was the plaintiff's duty to separate her goods from those of the execution debtor. — *Lewis* v. *Whitteman*, 5 N. H. 364; *Wellington* v. *Sedgwick*, 12 Cal. 469; *Gilman* v. *Hill*, 36 N. H. 311; *Taylor* v. *Jones*, 42 N. H. 25; *Ward* v. *Sheriff*, 7 Mass. 123. The taking of a bond under the statute restricts the plaintiff to her remedy under the statute. — *Bradley* v. *Holloway*, 28 Mo. 150; *Steele* v. *Farber*, 37 Mo. 71; *Rigor* v. *Owings*, 35 Mo. 506.

McCOMUS & McKEIGHAN, for the respondent: A claim under the statute does not bar an action by the claimant for trespass. — *Peckham* v. *Glass Co.*, 7 Mo. App. 563; *The State to use* v. *Doane*, 39 Mo. 51; *Wetzell* v. *Waters*, 18 Mo. 396. If the vendee gets possession before such levy, this validates the sale, although there might not be a sufficient delivery *before* that to vest the title in him as against the vendor's creditors. — *Clute* v. *Steele*, 6 Nev. 335; *Brinkerstaff* v. *Daub*, 19 Cal. 112; *Thornburgh* v. *Hand*, 7 Cal. 554; *Norment* v. *Nash*, 5 Mo. App. 545; *Smith* v. *Stern*, 17 Pa. St. 360.

HAYDEN, J., delivered the opinion of the court.

This is an action in the nature of trespass *de bonis asportatis*. After a general denial, the defendants pleaded that the goods were taken by the sheriff by virtue of a writ of attachment in a suit in which the defendants were plaintiffs, and Carabin & Co. were defendants, the levy having been on the goods as the property of the latter, who were debtors of the present defendant; that the present plaintiff thereupon claimed the property as hers, and the defendants gave the sheriff a bond to indemnify him, according to law, which was filed in the attachment case. It appeared that Carabin & Co., in February, 1877, were engaged in selling millinery and similar goods in St. Louis, and that the plaintiff was in their employ as a saleswoman. The plaintiff claimed title to the articles attached and sold by the sheriff by virtue of sales from Carabin & Co., and from other persons, to herself. These goods, which were bought of Carabin & Co., remained in their store, though they were separated from their goods and placed in another part of the store, where, with other goods which the plaintiff claimed to have bought from other persons, they remained, the plaintiff, who was at the time a saleswoman for Carabin & Co., selling to customers goods for them, as well as the goods which she claimed to be her own. Into the details of this part of the case it is unnecessary to go, as, apart from the question discussed below, there was no such delivery as the law requires, and no change of possession that will satisfy the statute. Wag. Stats. 281, sect. 10. The material inquiry is whether, as the creditors of Carabin & Co. did not attach until after the goods were removed from the rooms which formed the store of Carabin & Co., the subsequent removal is sufficient to satisfy the statute.

While the goods remained in the store of Carabin & Co., and were being sold as stated, that firm was pressed by creditors, and on February 2, 1875, made an assignment. On the preceding evening the goods in question were re-

moved by the plaintiffs from their store, and placed in another store hard by, where, about twenty days afterwards, they were attached by the defendants. There was judgment below for the plaintiffs.

It is contended by the defendants that the facts that the plaintiff made claim to the attached property, and that thereupon, under the Sheriff's Act of 1855, the defendants gave bond of indemnity, constitute a bar to this action. This position seems to confuse the remedy against the sheriff with that against the levying creditor. If a claim is made according to the act, and the officer demands and receives a sufficient bond of indemnity from the creditor, the claimant has no remedy against the officer. *Bradley* v. *Holloway*, 28 Mo. 150. But, on the basis that the claimant is compelled to sue, the act certainly gives no new right to the claimant of the property, though it may better secure a right he possesses. It relieves the officer, and incidentally affords a remedy to the claimant of the property, who " may bring a civil action on such bond." Acts 1855, p. 465, sect. 4. As the statute was not passed to relieve the attaching creditor, and as its effect is merely to give a new remedy, there is no reason for disregarding the established rule, and holding that the statutory remedy is exclusive; and such has not been the interpretation which the act has received in this State. *Peckham* v. *Lindell Glass Co.*, 7 Mo. App. 563; *The State to use* v. *Doan,* 39 Mo. 44. See *Wetzell* v. *Waters*, 18 Mo. 396. In *Lackland* v. *Owings*, 35 Mo. 506, the question was as to the measure of damages, where the owner, having claimed under the act and the plaintiff in execution having admitted the claim, refused to receive back the property, and insisted on his right to recover its value, as well as damages for the taking. That he was there so far concluded by the statute as not to be entitled to recover the value when he refused to avail himself of the right secured to him by statute, — namely, the right to a speedy return of the property ·in specie, — is noth-

ing to the present purpose. The defendants here took the property and sold it, thus denying to the plaintiff the opportunity of regaining it, and forcing her to sue.

If, as declared by the uniform course of decisions in this State, such a sale as that of Carabin & Co. to the plaintiff, was void, and no title to the goods passed to the plaintiff as against their creditors, it is difficult to see how this sale was validated by the subsequent removal of the goods. But the contradiction in terms involved in this doctrine is not so serious a matter as its effect in violating the spirit and purpose of the statute. By the words, "regard being had to the situation of the property," which follow the words making the sale void unless the sale "be accompanied by delivery in a reasonable time," the intent is shown to make delivery and a genuine change of possession essential in all cases within the purview of the statute. It is perfectly true that it is only creditors of the vendor and purchasers in good faith who are within the purview of the statute, and that the requirement is not as to sales where they are not concerned. It is also true that the mere fact of there being creditors is nothing. The claimant has possession, and this is good except as against process of some kind on the part of the creditor, who must show not merely a claim against his debtor, but a right to proceed against the property. But it by no means follows that if the possession is taken before the process of the creditor is levied, the alleged vendee will hold against the creditor. This is what seems to be assumed (*Clute* v. *Steele*, 6 Nev. 337), but the cases apparently relied on do not support the position. *Paige* v. *O'Neal*, 12 Cal. 483 ; *Bickerstaff* v. *Doub*, 19 Cal. 112 ; *Thornburg* v. *Hand*, 7 Cal. 554. The doctrine of these cases is, that where a stranger to the creditor's process is in the possession of the property, claiming it by a transfer from the debtor, which would prevent the latter from taking possession, the creditor or officer must justify by showing that he has a judgment and execution, or some

process regularly issued, as attachment. This is well-established doctrine. It is thus the creditor gets his *locus standi* — his position in court, from which he can attack the sale. But it is a mistake to suppose that when he has got this, the whole question of whether the sale complied with the statute or was fraudulent in law, is not open to him. That question obviously is open to him, since he is an attacking creditor, and, as an element of it, the inquiry as to reasonable time is vital. It is just at this point that the difference between our statute and the common law, as generally interpreted, under which latter were made most of the decisions relied on by the plaintiff, becomes essential. To confuse our statute with a law under which possession remaining with the vendor was merely evidence tending to prove fraud, is to ignore the reason why the statute was created. Under a law so different from ours, it might well be held that the delivery was good if perfected before execution. But it is of the essence of our statute that where, by his levy, the creditor has gained his right to question the sale, every element of its validity as a statutory sale is open to investigation. To this effect is the decision in *Chenery* v. *Palmer*, 6 Cal. 119, a case which appears never to have been questioned except in *Clute* v. *Steele*, *supra*, where, as indicated by the quotation from Hilliard on Sales, and the authorities cited from that work, the Supreme Court of Nevada evidently misapprehended the bearing of the later cases in California, and of similar decisions elsewhere.

It cannot be denied that a desire to avoid the hardship of particular cases has led to some decisions the tendency of which is to fritter away this wholesome provision of the law, and to destroy a peculiar advantage which it has over the law it replaced, — its certainty. But most of the decisions relied on by the plaintiff depend on other features than any here involved. As stated, decisions not under a similar statute are not in point, while decisions of which *Smith* v. *Stern*, 17 Pa. St. 360, is an example, merely relate to the

reasonableness of the time within which possession is taken. This last case, in fact, is an authority against the plaintiff.

In this State there are no lax decisons warping the statute. The later cases affirm the earlier cases, and declare that the statute requires " such a change as to preclude the hazard of the seller deriving a false credit from the continuance of his apparent ownership." *Wright* v. *McCormick*, 67 Mo. 426 ; *Lesem* v. *Herriford*, 44 Mo. 325 ; *Bosse* v. *Thomas*, 3 Mo. App. 472 ; *Bishop* v. *O'Connell*, 4 Mo. App. 578. The case of *Nash* v. *Norment*, 5 Mo. App. 545, has no bearing on the question here involved. That was not a case of sale, but, as intended, a mortgage ; and as it turned out, of a debtor preferring a creditor. No question of delivery arose under the statute, and in fact there was never any creditor who levied on the property in question.

Thus, on the basis of the facts we have assumed, the sale was void in law as to the goods of Carabin & Co. As to those purchased from other persons by the plaintiff, and put by her with goods of the same kind which she received from Carabin & Co., the question is to be solved by the application of the rule that where one wrongfully intermingles goods of the same kind belonging to him with goods of another, the burden is on the wrong-doer to distinguish and separate the two, or take the consequences of loss. But the present is not merely a case where the goods of A., found intermingled with the goods of B., are attached for the debt of A. If, in such a case, it is impossible for the creditor to distinguish between the two, especially if the blame be attributable to B., the whole may be attached as the goods of A. *Taylor* v. *Jones*, 42 N. H. 25 ; *Lewis* v. *Whittemore*, 5 N. H. 364. See *Gilman* v. *Hill*, 36 N. H. 311. If the person whose goods are so intermingled has notice of the levy, the burden is on him to make the separation. *Bond* v. *Ward*, 7 Mass. 123. In the case at bar, however, the levy was on property in the hands of A., on the assumption that A.'s title was fraudulent, and that

B. owned the goods. If certain goods in fact belonged to A. and were mingled with those of B., the creditor of B. had no right to demand a selection at the hands of A., unless there was actual fraud in respect to the intermixture on the part of A. In such case A. may in good faith claim all of the goods as his, and he cannot be deprived of the opportunity of testing his right to the whole, which right, as here, may not depend on actual fraud. A.'s right to the goods so intermixed with those of the debtor, depends on whether the intermixture is fraudulent on A.'s part. If he was privy to no design on the part of the debtor to cover up his goods or keep them from attachment, but innocently mingled his own goods with goods of the debtor, believing all were his own, he would be entitled, as against the defendant, to recover the value of his goods. *Treat* v. *Barber*, 7 Conn. 274; Drake on Attach., sect. 199. It would lie with the plaintiff to establish the title, and with the defendant to prove a fraudulent intermixture.

The plaintiff's objection as to the defence not being admissible under the pleadings, was not properly taken below, and need not be further noticed here.

It follows, from what has been said, that the instructions were erroneous; and for this error the judgment must be reversed and the cause remanded for a new trial. Judge BAKEWELL concurs; Judge LEWIS is absent.